FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 04, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CHEYANN L..,[1]

                          Plaintiff,

        v.

MARTIN O'MALLEY, Commissioner of
Social Security,

                          Defendant.

No.    4: 24-cv-05035-EFS

**ORDER REVERSING THE ALJ'S
DENIAL OF BENEFITS, AND
REMANDING FOR FURTHER
PROCEEDINGS**

        Due to autism spectrum disorder, attention deficit hyperactivity disorder

(ADHD), bipolar, anxiety, depression, post-traumatic stress disorder (PTSD), binge

eating, restless leg syndrome, a bladder disorder, and obsessive-compulsive

disorder (OCD), Plaintiff Cheyann L. claims that she is unable to work fulltime and

applied for disability insurance benefits. She appeals the denial of benefits by the

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as
"Plaintiff." *See* LCivR 5.2(c).

Administrative Law Judge (ALJ) on the grounds that the ALJ erred by failing to fully develop the record, erred at step two in failing to fully properly evaluate Plaintiff's autism spectrum disorder and bladder disorder, improperly evaluated the opinions of the treating and examining medical sources, improperly assessed Plaintiff's testimony, and improperly assessed the lay testimony. She also argues that the Appeals Council erred in not remanding the case on the basis of evidence submitted after the hearing.  As is explained below, the ALJ erred. This matter is remanded for further proceedings.

## I.    Background

In May 2021, Plaintiff filed an application for benefits under Title 2, claiming disability beginning April 19, 2021, based on the physical and mental impairments noted above.[2]  Plaintiff's claim was denied at the initial and reconsideration levels.[3] After the agency denied Plaintiff benefits, ALJ Caroline Siderius held a telephone hearing in June 2023, at which Plaintiff appeared without a representative.[4]  Plaintiff and a vocational expert testified.[5]  The ALJ

---

[2] AR 163, 197.

[3] AR 91, 98.

[4] AR 53-73.

[5] *Id.*

advised Plaintiff that she had the right to an attorney but did not explain the fee structure for representatives.[6]

Plaintiff testified that she was currently employed working two eight-hour days per week at Solstice Senior Living and had been there since September 4, 2022.[7] She said that she lived with her mother and that her 14 year old daughter was with them about 50 percent of the time, and that she had obtained a Bachelor's degree in business.[8] Plaintiff said her job is a concierge, in which she will help residents by bringing up deliveries and packages.[9] She said she had difficulty dealing with some of the residents because it can be busy and there are expectations from residents and it is hard for her when there are multiple people asking for help.[10] Plaintiff said she is sensitive and has gotten better at deescalating situations and working on calming herself but that she is easily agitated and needs to take a lot of breaks.[11] When she is on a break, she goes to a quiet place to calm herself.[12]

---

[6] AR 57.

[7] AR 59.

[8] *Id.*

[9] AR 60.

[10] *Id.*

[11] AR 60-61.

[12] AR 61.

Plaintiff said that a couple of times she tried to work three days a week but that by the third day she was crying and not able to get tasks done like she did the first two days.[13] Plaintiff said that because of her autism and her Tourette's syndrome she will get overwhelmed and that her ticks get severe and she needs six to eight hours of down time.[14] She said that she also has an overactive bladder but does not know why, and that her Tourette's causes physical ticks, including stretching her arm, popping out her jaw, and pushing her fingernails into her stomach.[15]

Plaintiff testified that in 2011 her father got her a job at Hanford as a janitor and she was able to work full-time because he was providing her housing and organized her daily routine.[16] She was stable on medication after a couple of mental breakdowns but then her father died and she was not able to function without his help.[17] When she was married, her husband provided the same support and she was able to work full-time at the Department of Revenue but she required multiple medications and gained 100 pounds.[18] Plaintiff said that she has been

---

[13] *Id.*

[14] *Id.*

[15] AR 61-62.

[16] AR 62.

[17] *Id.*

[18] AR 62-63.

seeing a counselor, Julie Wilde, since 2019, and she used to see her once every three weeks but presently saw her once a month due to lack of insurance.[19] Plaintiff said she was prescribed Adderall but was not taking it because she was calmer without it.[20] She said that while at the Department of Revenue she worked full-time for eight or nine months but then had to take leave under FMLA because was mentally and physically ill.[21] She said that when she got sick she would get a sore throat and mentally be unable to show up for work or get out of bed for a week.[22] Plaintiff said that she had difficulty both with jobs that involved interaction with others and jobs that did not.[23] She said that either type of job caused an increase in her Tourette's symptoms because there was pressure to follow direction and she thinks in literal terms which are difficult for bosses to explain.[24]

When asked if she could handle performing a basic job, Plaintiff said that her work as a janitor a Handford was basic but that she was not able to handle it

---

[19] AR 63.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] AR 64.

[24] *Id.*

for more than 20 hours a week without having a sensory overload.[25] She said that

when she has a sensory overload she would not be able to complete basic daily

activities such as showering and brushing her teeth.[26] When asked what she would

be overloaded with, Plaintiff answered that the ordinary stresses of life and that

she needs to decompress.[27] When the ALJ asked why she could not be calmed by

medication, Plaintiff explained that gene therapy, anti-depressants, and anti-

psychotics had not helped and that the only thing that helped was limiting her

hours to two days per week.[28] Plaintiff said that her job was fifty percent sitting

and forty percent moving around.[29]

Plaintiff stated that she had tried different jobs and tried working for

different amounts of time, and that no matter what she tried, she needed down

time to compose herself or she could not function.[30] Plaintiff said that when

working for the Port Authority she was a cashier and customer service person but

had difficulty counting money.[31] She said that when working in Department of

---

[25] *Id.*

[26] AR 64-65.

[27] AR 65.

[28] *Id.*

[29] *Id.*

[30] AR 66.

[31] AR 67.

DISPOSITIVE ORDER - 6

Revenue she would call and remind businesses to file forms or pay quarterly taxes.[32]

After the hearing, the ALJ issued a decision denying benefits.[33] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[34] As to medical opinions, the ALJ found:

- The opinions of state agency evaluator Christine Harmon, MD, that there was insufficient evidence to evaluate the claim to be not persuasive.

- The opinions of state agency evaluator Jeffrey Merrill, MD, and Matthew Comrie, PsyD, to be persuasive.

- The opinions of consultative examiner Diana Cook, PhD, to be somewhat persuasive.

- The opinions of treating source Angela Hamel, DNP, ARNP, PMHNP-BC, to be not persuasive.

- The opinions of treating source Julie Wilde, MA, LMHC, to be unpersuasive.[35]

---

[32] *Id.*

[33] AR 41-43.  Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[34] AR 25-26.

[35] AR 26-30.

The ALJ also found letters written by Plaintiff's mother, sister, former spouse and coworker to be not consistent with the objective record.[36] As to the sequential disability analysis, the ALJ found:

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2027.

- Step one: Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 19, 2021.

- Step two: Plaintiff had the following medically determinable severe impairments: bipolar disorder, anxiety disorder, and depressive disorder.  The ALJ also found that Plaintiff's obesity was not a severe impairment and that autism spectrum disorder and bladder issues were not medically determinable impairments.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, including specifically Listing 12.04 and 12.06.

- RFC:  Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following exceptions:

  [Plaintiff is] able to maintain attention and concentration in two hour increments; able to persist in a work-related activities that are not production goal based or do not have a specific required completion time; able to complete a work day and/or a work week at a consistent pace and will not need an unreasonable number

---

[36] AR 44.

of breaks (just ordinary breaks); occasional brief contact with general public and coworkers.

- **Step four:** Plaintiff is able to perform her past relevant work as a janitor.

- **Step five:** in the alternative, considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a housekeeper cleaner (DOT 323.687-014), marker (DOT 209.587-034), and mail clerk (DOT 209.687-026).[37]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[38]

## II. Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[39] and such error impacted the nondisability determination.[40] Substantial evidence is "more than a mere scintilla but less than a

---

[37] AR 35-46.

[38] AR 248.

[39] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[40] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 404.1520(a) (recognizing that the court may not reverse an

preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."[41]

### III.    Analysis

Plaintiff seeks relief from the denial of disability on six grounds. She argues

the ALJ erred by failing to develop the medical record, when evaluating the

medical opinions; erred at Step Two by failing to find that Plaintiff's autism

spectrum disorder was a severe impairment, erred when evaluating Plaintiff's

testimony, and erred when evaluating the lay testimony.  She also argues that the

Appeals Council erred by not remanding the case after evidence was submitted

post decision.   The parties agree that the ALJ erred at Step Two in not finding

autism spectrum disorder to be a severe impairment but disagree whether the

error was consequential.  As is explained below, the Court concludes that the ALJ's

_____

ALJ decision due to a harmless error—one that "is inconsequential to the ultimate

nondisability determination").

[41] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.

1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The

court "must consider the entire record as a whole, weighing both the evidence that

supports and the evidence that detracts from the Commissioner's conclusion," not

simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*,

143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does

not indicate that such evidence was not considered[.]").

error was consequential and tainted her evaluation of the medical opinions, Plaintiff's testimony, and lay witness testimony.  The Court also concludes that the record requires development.

**A.    Step Two: Plaintiff establishes consequential error.**

Plaintiff argues that the ALJ erred at step two by failing to find her autism spectrum disorder to be a severe impairment.[42]  The Commissioner concedes that the ALJ erred in finding that autism spectrum disorder was not a medically determinable impairment but argues that the error was harmless because the ALJ found that Plaintiff had the severe impairments of bipolar disorder, anxiety disorder, and depressive disorder and considered the limitations from those impairments through the remainder of the analysis.[43] The Court disagrees with the Commissioner and finds that the ALJ's error was consequential.

1.    <u>Standard</u>

At step two of the sequential process, the ALJ determines whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.[44] This involves a two-step

---

[42] ECF No. 6.

[43] ECF No. 8.

[44] 20 C.F.R. § 416.920(c).

process: 1) determining whether the claimant has a medically determinable impairment and 2), if so, determining whether the impairment is severe.[45]

Neither a claimant's statement of symptoms, nor a diagnosis, nor a medical opinion sufficiently establishes the existence of an impairment.[46] Rather, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."[47] Evidence obtained from the "application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence.[48] If the objective medical signs and laboratory findings demonstrate the claimant has a medically determinable impairment,[49] the ALJ must then determine whether that impairment is severe.[50]

---

[45] *Id.* § 416.920(a)(4)(ii).

[46] *Id.* § 416.921.

[47] *Id.*

[48] 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019). *See also* 20 C.F.R. § 416.913(a)(1).

[49] "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms)." 20 C.F.R. § 416.902(l).

[50] *See* Soc. Sec. Ruling (SSR) 85-28 at *3 (1985).

The severity determination is discussed in terms of what is *not* severe.[51] A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."[52] Because step two is simply to screen out weak claims,[53] "[g]reat care should be exercised in applying the not severe impairment concept."[54]

### 2.    The ALJ's Findings

When considering impairments at step two, the ALJ found that Plaintiff suffered from the severe impairments of bipolar disorder, anxiety disorder, and depressive disorder.[55]  She then stated that autism spectrum disorder was not a medically determinable impairment, and articulated the following reasoning:

> A thorough review of the record shows insufficient evidence of autism spectrum disorder (see 10F, 22E). The claimant's psychiatric nurse practitioner submitted a letter stating the claimant's atypical behaviors are consistent with autism spectrum disorder level 1 (10F). However, aside from a diagnosis, treatment notes document no objective medical evidence supporting this condition. Therefore, this impairment is not a medically determinable impairment.[56]

---

[51] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[52] *Id.*; *see* SSR 85-28 at *3.

[53] *Smolen*, 80 F.3d at 1290.

[54] SSR 85-28 at *4.

[55] AR 36.

[56] *Id.*

DISPOSITIVE ORDER - 13

3.    <u>Relevant Medical Records</u>

Because the Court is considering the ALJ's evaluation of autism spectrum disorder, only those medical records which are relevant will be included.

a.    <u>*Dr. Cook*</u>

On March 23, 2022, Plaintiff was examined by consultative examiner Diana Cook, PhD, at the request of the Commissioner.[57] Plaintiff reported that she had been diagnosed with autism two months prior and had been diagnosed with bipolar and major depressive disorder at age 10.[58] Plaintiff was tearful on presentation and stated that she cannot keep a job due to anxiety, and that her depression was not severe until her father's death 10 years prior.[59] Plaintiff reported that after her recent diagnosis with autism her medications were stopped until a new treatment plan was formulated.[60] Plaintiff reported that she continued to see a therapist once a month.[61]

Plaintiff reported that she was married for 9 years but separated in November 2021, and still saw her ex-husband and step-daughter.[62] Plaintiff

---

[57] AR 488-492.

[58] AR 488.

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] AR 489.

reported that she lost her last job in December and lost a job prior to that in March 2021, and that she was let go because she was slow and could not understand directions.[63] Plaintiff reported that she worked for the Department of Revenue for three years and had an abusive boss, and that she worked as a janitor for five years prior to her father's death.[64] Plaintiff reported that she does not use alcohol or substances.[65] Plaintiff reported rapid cycles between mania and depression.[66]

On mental status examination, Plaintiff presented with good grooming; was polite and cooperative but had nervous fidgeting with her hands; had normal speech; denied suicidal plan but endorsed suicidal ideation since high school; stated her mood was good and had congruent affect; was oriented; had normal memory, concentration, attention and fund of knowledge; was able to think abstractly; and had impaired judgment and insight.[67]

Dr. Cook diagnosed bipolar disorder and autism.[68] Dr. Cook states that Plaintiff functions well in her home and seemed genuine in her description of her

---

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] AR 490.

[67] AR 490-491.

[68] AR 491.

struggle in the workplace and rapid cycling.[69] Dr. Cook opined that Plaintiff would be unimpaired in the following tasks: perform simple and repetitive tasks, and perform detailed and complex tasks.[70]  She opined that Plaintiff would have difficulty with the following tasks: accepting instructions from supervisors; interacting with coworkers and the public; and completing a normal work day or work week without interruption from symptoms.[71] She opined Plaintiff would have a marked difficulty in completing the following tasks: performing work activities on a consistent basis without special or additional instruction; maintaining regular attendance; and dealing with the usual stress encountered in the workplace.[72]

   b.   _Dr. Hamel_

  On June 7, 2022, Plaintiff presented to Angela Hamel, DNP, ARNP[73], on the referral of Kade Sharp for assessment of autism and ADHD, as well as medication management.[74] Plaintiff reported prior trials of Trazadone, Lamotrigine, Ropinirole, Wellbutrin, Cymbalta and Effexor, with report that the last two caused

---

[69] _Id._

[70] AR 491-492.

[71] _Id._

[72] _Id._

[73] Angela Hamel holds a doctorate in nursing practice, and her proper title is Dr. Hamel.

[74] AR 588.

suicidal ideation and a 100-pound weight gain.[75] Plaintiff reported that she was working 20 hours per week but could not hold down a full-time job, does not feel functional, has difficulty interacting with others, had difficulty maintaining attention and communicating with others, and struggled to regulate her emotions.[76] Dr. Hamel noted that Plaintiff's development was delayed with delayed speech, additional needs for assistance in personal care, lack of coordination as a child, and a struggle to write legibly.[77] Dr. Hamel noted that Plaintiff had a master's degree and no history of special education.[78] Plaintiff reported a history of brief employment with one long term job as a janitor.[79] On mental status examination Plaintiff was cooperative and engaged but tearful, had normal mood and affect, intermittent eye contact, coherent thought process, and normal memory, coordination, insight, and judgment.[80] She had no perceptual disturbances or delusions, and was oriented in all spheres.[81]

---

[75] *Id.*

[76] *Id.*

[77] AR 589.

[78] *Id.*

[79] AR 590.

[80] AR 591.

[81] *Id.*

Dr. Hamel evaluated Plaintiff for autism.[82] Dr. Hamel noted mental status findings within normal limits; a history of developmental delay and lack of coordination.[83] Dr. Hamel noted no  physical symptoms.[84] As to psychiatric conditions, Dr. Hamel noted the following: depression since age 9 which manifests as feeling down, guilt, trouble concentrating, insomnia, and fatigue; no manic symptoms; daily anxiety since age 9 manifesting as worrying, becoming easily annoyed and feeling fearful; weekly panic attacks characterized by shortness of breath, chest pain, sweating, and crying; obsessions over routine and a "bad mood" if it is interrupted; trouble concentrating; a history of suicidal ideation but no present plan following recent treatment; insomnia and restless leg syndrome resulting in 4-6 hours of sleep a night; and binge eating as emotional coping tool.[85] Dr. Hamel noted that on the Autism Spectrum Quotient (AQ) scores in the 35-50 range indicate significant autistic traits and Plaintiff scored 36 out of 50.[86] Dr. Hamel stated that based on history and observed behaviors Plaintiff has impairments in the criteria of social communication and social interaction with deficits in two of the three functional areas and deemed the severity Level 1,

---

[82] AR 593.

[83] *Id.*

[84] AR 595.

[85] AR 595-596.

[86] AR 596.

requiring support.[87]  She had deficits in the following areas: nonverbal

communicative behaviors; and developing, maintaining, and understanding

relationships.[88] With regard to restricted or repetitive patterns of behavior and

interests, Plaintiff met the criteria in three of four functional areas, and had a

severity Level 1, requiring support.[89]  She had deficits in the following areas:

inflexible routines or adherence to ritualized patterns; highly restricted, fixated

interests that are abnormal in intensity or focus; and hyperreactivity to sensory

input.[90] Plaintiff met the criteria for symptoms being present in the early

development period and also met the criteria for symptoms causing significant

impairment in social or occupational functioning.[91] Lastly, Dr. Hamel found that

Plaintiff's symptoms were not better explained by a different diagnosis.[92]  Based on

the examination, Dr. Hamel diagnosed Plaintiff with Autism Spectrum Disorder

---

[87] AR 597.

[88] *Id.*

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] *Id.*

1    and Attention Deficit Hyperactivity Disorder.[93] Dr. Hamel recommended treatment

2    with Adderall and noted that Plaintiff was seeing a counselor regularly.[94]

3         On June 21, 2022, Dr. Hamel wrote a narrative letter titled "RE: Diagnosis

4    of Autistic Disorder" and addressed "To Whom it May Concern."[95]  The letter

5    stated:

6         [Plaintiff] was evaluated on 06/07/2022 at Columbia Basin Psychiatric
         Solutions by Angela Hamel, DNP, ARNP, PMHNP-BC. [Plaintiff]
7         demonstrates impairments in social interaction, social communication,
         and atypical behavior consistent with Autism Spectrum Disorder, Level
8         #1 (DSM-5 code 299.00, ICD. 10 code F84.0). [Plaintiff's] behaviors and
         skill deficits have had an adverse impact on her development and social
9         communication. [Plaintiff] has some functional impairment, as
         documented on 06/07/2022, that occasionally interfere with her ability
10        to participate adequately in home, school, and other community
         environments.  The findings of this evaluation were also consistent with
11        Attention Deficit Hyperactivity Disorder, combined type (ICD. 10 code
         F90.2).[96]

12

13             c.    _LMHC Wilde_

14        On April 16, 2023, wrote a narrative letter stating that she had been

15   working with Plaintiff in individual therapy since June 2019.[97] LMHC Wilde wrote

16   that Plaintiff presented for counseling with symptoms of irritation, anxiety, and

17   _____

18   [93] AR 592.

19   [94] _Id._

20   [95] AR 493.

21   [96] _Id._

22   [97] AR 586.

23

mood instability, and stated that Plaintiff had been consistent and motivated in

attending therapy.[98] LMHC Wilde wrote that it was evident from treatment that

Plaintiff experiences episodes of increased depression, anxiety, mood instability,

and difficulty with emotional regulation.[99] She noted that Plaintiff's condition had

improved but that she still experienced exacerbations and that when she did she

struggled with self-care and activities of daily living.[100] LMHC Wilde notes that

Plaintiff's exacerbations had affected her ability to hold employment and her

condition had been more stable since starting part-time employment.[101]

    4.   <u>Analysis</u>

    The Commissioner conceded that the ALJ erred in failing to find that

Plaintiff's autism spectrum disorder was a severe impairment and stated:

> The Commissioner concedes that this finding was in error, as Ms.
> Hamel completed an evaluation and administered the Autism
> Spectrum Quotient (AQ). Tr. 596. Results of that test indicated
> significant autistic traits. Tr. 596. However, despite not identifying
> this or ADHD as severe impairments at step two, any error would be
> harmless. [102]

---

[98] *Id.*

[99] *Id.*

[100] *Id.*

[101] *Id.*

[102] ECF No. 8, pg. 8.

1    Plaintiff argued in her reply brief that the ALJ's error was consequential

2    because despite the fact that the ALJ found Plaintiff suffered from bipolar,

3    depression, and anxiety, an evaluation of those impairments would not properly

4    consider Plaintiff's limitations in working full-time without becoming overloaded or

5    overwhelmed.[103]

6    Plaintiff is correct that the limitations which one would expect from autism

7    spectrum disorder are distinctly different than those one would expect from bipolar

8    disorder, depression, and anxiety.  Plaintiff was diagnosed by Dr. Hamel with

9    Level 1 autism spectrum disorder, a diagnosis which inherently indicates that the

10   individual diagnosed is "requiring support" services, and that without supportive

11   services in place symptoms are expected to cause noticeable impairments.[104]

12   It was the testimony of Plaintiff that she was capable of working full-time

13   during her employment because her father provided her with substantial

14   supportive services.[105]  She stated that her father organized everything for her

15   prior to his illness.[106] Plaintiff testified that even the simple work as a janitor at

16   _____

17   [103] ECF No. 9.

18   [104] AR 493. American Psychiatric Association. (2022). *Diagnostic and statistical*

19   *manual of mental disorders*, Code 299.00. (5th ed., text rev.).

20   https://doi.org/10.1176/appi.books.9780890425787.

21   [105] AR 62.

22   [106] *Id.*

23

Hanford would at times result in sensory overload but that she was able to decompress because her father provided support in her daily activities of living.[107] She testified that when her father died she was not able to function without his help.[108] Notably, Plaintiff testified that during the only other time that she was able to sustain full-time work, her then-husband provided similar support.[109]

While Plaintiff did not use the term "sensory overload" in her testimony, her description of her difficulty is consistent with sensory overload experienced as a result of autism.  The following exchange took place on the record:

> Pl: So, my job at Department of Revenue I was doing that.  I lasted about, almost eight to nine months doing full 40 hours.  And, I had to get FMLA.  And, I would run it out.  Because, I would, I would need time off.  I would need, you know, downtime.  I would get mentally ill.  I'd get physically ill. I'd get a sore throat.  I'd get -- I'd just have a mental breakdown.  I would not be able to show up for work the next day. And then, I'd be in bed for a week.  And, it just -- it's, like, it,it makes me mentally and physically ill.
>
> ALJ: Is it because of the interaction with people or is it physically?
>
> Pl: I think it's both.  I think it's both, because I've had both - like, human interaction jobs and human interaction jobs.  And, I think they just both cause me to have to, you know, I find my Tourette's where I push on my stomach or pop my jaw or put up my arms or flail or, like, bend or.  You know, do any of these things that I can make feel better.  And, they're -- and, it's just a lot of pressure, you know, the expectations.  But, I don't really understand directions very well. I'm very literal.  And, I've not had very many bosses that

---

[107] AR 64-65.

[108] AR 61-62.

[109] AR 62-63.

wouldn't, you know, be really easy or have them type (PHONETIC) instructions for me when I don't understand those.

ALJ: So, what if you had a job that was pretty basic. I mean, you're just doing simple things and you're not working around people or with the public. If you're not having that kind of information overload, why couldn't you do a job like that?

Pl: That's what I did, actually, at Hanford. I was a janitor. And, it was okay for 20 hours. And then I would just get overloaded on the, the other days where I - you know, you still got to show up. You still got to get your work done. You still got to, you still got to, like, get -my thing is, like, I, I can no longer brush my teeth. I can't shower. I'll just go a week at time without bathing. And, it's, like, I get so overload I can't take care of myself anymore.

ALJ: And overloaded with what?

Pl: Just, like, like, life. You know what I mean. I want to just go do my dishes. I have to still do my laundry. I have to still take care of myself and my room and everything. It's, like, I don't have enough hours in the day to relax and be composed and decompress.[110]

Plaintiff's testimony was consistent with an individual experiencing "sensory overload" when not provided supportive services. It was consistent with her diagnosis of autism spectrum disorder, Level 1.

Because the ALJ failed to consider the diagnosis of autism spectrum disorder, she failed to consider what supportive services were necessary. The ALJ's formulated RFC does not contain any provision for supportive services.

---

[110] AR 63-65.

1
2
3
4
5
6

Although step-two errors are often harmless,[111] and the Commissioner argues that any error here was harmless because the ALJ considered Plaintiff's other mental impairments later in the sequential evaluation, the record does not support that conclusion.  Here, the ALJ's step-two error was not harmless.  The ALJ did not consider Plaintiff's need for supportive services caused by her autism during the later sequential steps.[112]

7
8
9
10

The Court cannot be certain that the step-two error was not prejudicial at the later steps.  The Court concludes that the case should be remanded and the ALJ should be directed to develop the record as to Plaintiff's autism spectrum disorder.

11
12

**B.    Plaintiff's other arguments as to ALJ error: issues to be reconsidered on remand.**

13
14

As noted above, the ALJ's failure to consider Plaintiff's autism spectrum disorder tainted the ALJ's consideration of the medical opinions, Plaintiff's

15
16

_____

17
18

[111] *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

19
20
21
22

[112] *See Burch*  400 F.3d at 2  682 ("Assuming without deciding that this omission constituted legal error [at step two], it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor.").

23

testimony, and the statements made by third parties.[113]  Because the Court has remanded the case for consideration of the record as a whole, the ALJ will be required to consider the medical opinions, the third-party testimony, and the credibility of Plaintiff's subjective complaints.

**C.    Appeals Council Error: This issue is moot.**

Because the Court has concluded that remand is warranted to address the ALJ's errors, this issue is moot.

**D.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[114] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[115]

---

[113] An ALJ must consider and articulate how persuasive she found each medical opinion, including whether the medical opinion was consistent with and supported by the record. 20 C.F.R. §§ 404,1520c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[114] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[115] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for

The Court finds that further development is necessary for a proper disability determination. Here, it is not clear what, if any, additional limitations are to be added to the RFC. Therefore, the ALJ should properly consider the effects of all Plaintiff's medically determinable and severe impairments, reevaluate the opinion evidence, and make findings at each of the five steps of the sequential evaluation process.

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 6 and 8**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 4th day of September, 2024.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge

---

additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).